# EXHIBIT B

# AZURE SHIPPING CORPORATION S.A.
Torre Universal, Ave. Federico
Panama, R.P.

LINER AND COMBINED TRANSPORT
BILL OF LADING

BILL OF LADING NO. CXMNHAC07056011

| SHIPPER | DOCUMENT NUMBER | BOOKING NUMBER |
|---|---|---|
| MURPHY-BROTHERS INTERNATIONAL EXPOSITION, INC C/O AS AGENTS<br>AMERICAN SHIPPING AND CHARTERING<br>1990 POST OAK BLVD, SUITE 1350<br>HOUSTON, TEXAS 77056 | EXPORT REFERENCES<br><br>FORWARDER REF NO | |

| CONSIGNEE | SHIPPER'S REF |
|---|---|
| MURPHY BROTHERS INTERNATIONAL EXPOSITION, INC C/O AS AGENTS<br>AMERICAN SHIPPING AND CHARTERING<br>1990 POST OAK BLVD, SUITE 1350<br>HOUSTON, TEXAS 77056 | FORWARDING AGENT F M C NO<br><br>POINT AND COUNTRY OF ORIGIN |

| NOTIFY PARTY | DOMESTIC ROUTING/EXPORTING INSTRUCTIONS |
|---|---|
| SAME AS CONSIGNEE<br>CONTACT: DAVID BERNSTEIN<br>TEL:+1 (713) 600 7620 FAX: +1 (713) 600 7636<br>EMAIL: DAVID@AMERICANSHIPPING.COM | |

**COPY NOT NEGOTIABLE**

| PLACE OF RECEIPT | PRE-CARRIER | |
|---|---|---|
| EXPORTING CARRIER<br>M/V HAI AN CHENG V. 56 | PORT OF LOADING/EXPORT<br>DALIAN | |
| PORT OF DISCHARGE<br>HOUSTON | PLACE OF DELIVERY | CARGO VALUE DECLARED BY SHIPPERS AGAINST PAYMENT OF AD-VALOREM FREIGHT |

## PARTICULARS FURNISHED BY SHIPPER

| MARKS AND NUMBERS | NO. OF PKGS. | DESCRIPTION OF PACKAGES AND MERCHANDISE | GROSS WEIGHT | MEASUREMENT |
|---|---|---|---|---|
| | 62<br>6<br>68 TOTAL | PACKAGES CARNIVAL EQUIPMENT (RIDES) PLUS<br>40' CONTAINERS: SLAC: CARNIVAL EQUIPMENT<br>TOTAL: SIXTY-EIGHT (68) PACKAGES ONLY<br><br>REMARKS:<br>' ALL CARNIVAL EQUIPMENT IS USED'<br>' SOME UNITS ARE BROKEN AND BENT ON SURFACE'<br>' ALL CARGO WAS OIL STAINED'<br>' OIL LEAK NOTED IN MOST OF THE PIECES'<br>' PLYWOOD ATTACHED TO MOST OF THE PIECES<br>WERE DETERIORATED AND BROKEN AT PLACES'<br>' SIDE PLATE AND THE RIM OF THE BOXES WERE PARTLY BROKEN.'<br>' NUMEROUS LIGHTS AND LIGHT COVERS WERE BROKEN.'<br>' ALL CARGO PARTLY RUST STAINED AND SOME OF THE PIECES WERE<br>RUSTED TO A GREATER EXTENT.'<br>' ALL CARGO HAD NUMEROUS DENTS AND SCRATCHES AT THE SIDES.'<br>' SOME OF THE TRUCK/TRAILER TIRES ARE VERY OLD AND DEFLATED OR ARE MISSING.'<br>' 8 PCS CARNIVAL EQUIPMENT AND 6 X 40' CONTAINERS'<br>' LOADED ON DECK AT SHIPPERS' RISK AND RESPONSIBILITY'<br>' SLAC: SHIPPER'S LOAD, STOW, WEIGHT AND COUNT '<br>LOADED ON BOARD: JUNE 27, 2007<br><br>*** FREIGHT COLLECT *** | 992,274 KGS | |

| FREIGHT DETAILS, CHARGES, ETC | RECEIVED BY THE CARRIER THE GOODS AS SPECIFIED ABOVE IN APPARENT GOOD ORDER AND CONDITION EXCEPT AS STATED OTHERWISE ABOVE, SUBJECT TO ALL THE TERMS AND CONDITIONS APPEARING ON THE FRONT AND REVERSE OF THIS BILL OF LADING TO WHICH THE MERCHANT AGREES BY ACCEPTING THIS BILL OF LADING, ANY LOCAL PRIVILEGES AND CUSTOMS NOTWITHSTANDING. IN WITNESS WHEREOF THE NUMBER OF ORIGINAL BILLS OF LADING AS STATED BELOW HAVE BEEN SIGNED, ALL OF THE SAME TENOR AND DATE, ONE OF WHICH BEING ACCOMPLISHED THE OTHERS TO STAND VOID. ONE (1) ORIGINAL BILL OF LADING MUST BE SURRENDERED TO THE CARRIER, DULY ENDORSED, IN EXCHANGE FOR THE GOODS OR A DELIVERY ORDER. |
|---|---|
| FREIGHT DETAILS, CHARGES ETC<br>AS PER BOOKING CONFIRMATION<br>DATED JUNE 12, 2007<br>AND ANY ADDENDA THERETO | |
| | SIGNED FOR AND ON BEHALF OF THE MASTER BY |
| PLACE OF ISSUE | DATE OF ISSUE |
| HOUSTON, TX | June 27, 2007 |
| NUMBER OF ORIGINAL BS/L ISSUED | |

**AMERICAN SHIPPING AND CHARTERING**
as agents only

**LINER AND COMBINED TRANSPORT BILL OF LADING**

Received from the shipper in apparent good order and condition unless otherwise indicated herein, the goods, or the container(s) or package(s) SAID TO CONTAIN the cargo herein mentioned, to be carried subject to all the terms on the face and back of this Bill of Lading by the vessel named herein or by any additional or substitute vessel or means of transport chosen at the Carrier's option, from the place of receipt or the port of loading to the port of discharge or place of delivery if shown herein, there to be delivered. This Bill of Lading, duly endorsed must be surrendered in exchange for the goods or delivery order. The Merchant warrants that he is legal holder of this Bill of Lading and is legally entitled to the goods.

**PARTIES TO THE BILL OF LADING**
1. Merchant
Whenever the term "merchant" is used in this Bill of Lading it shall be deemed to include the shipper, receiver, consignee, holder of the Bill of Lading and the owner of the cargo.
2. Carrier
Notwithstanding anything which appears herein to be to the contrary the carrier is, and shall be deemed to be, the owner of the vessel or, as the case may be, the charterer by demise. Under no circumstances whatsoever shall a charterer (other than by demise), agent or other person whether named herein or not, be deemed to be the carrier.
3. Contract
The contract evidenced by this Bill of Lading is between the merchant and carrier as aforesaid.
4. Third Party
Should, contrary to the express agreement contained in Clause 3 herein, a third party be deemed to be the carrier for any purposes whatsoever the said third party shall be entitled to all the rights, liberties, limitations and exceptions available herein as if that third party were the carrier.

**GOODS DESCRIPTION**
5. General
Notwithstanding Clause 8(a) herein the goods carried hereunder are shipped on board in apparent good order and condition. Weight, measure, marks, numbers, quality, quantity, value and contents are unknown any statement to the contrary herein notwithstanding.
6. Iron & Steel
The term "apparent good order and condition" when used with reference to any iron, steel or metal products does not mean that when the goods were shipped they were free of visible rust, oxidisation or like condition, or moistures. If the merchant so requests on shipment a substitute Bill of Lading will be issued setting forth the notations of visible rust and moisture which appears upon the mate's or oily clerk's receipts. The merchant expressly acknowledges the presence of rust and moisture upon shipment will mean as a natural incidence of the voyage the goods will be discharged rusty or rustier than on shipment.
7. Timber
The terms "apparent good order and condition" when used with reference to timber or timber products does not mean that when the goods were shipped they were free of stains, warps, shakes, splits, holes or broken pieces. If the merchant so requests on shipment a substitute Bill of Lading will be issued setting forth the notations which appear upon the mate's or clerk's receipts.

**MERCHANT'S RESPONSIBILITY**
8(a) The description and particulars of the goods set out on the face hereof are furnished by the merchant and the merchant warrants to the carrier that they are correct.
(b) The merchant shall comply with all applicable laws, regulations and requirements of Customs, port and other authorities and shall bear and pay all duties, fines, taxes, imposts, expenses and losses incurred or suffered by reason thereof or by reason of any illegal, incorrect or insufficient marking, numbering or addressing of the goods.
(c) The merchant warrants that the goods are packed in a manner adequate to withstand the risks of carriage having regard to their nature and in compliance with all laws, regulations and requirements which may be applicable.
(d) The merchant shall be liable for the loss, damage, contamination, soiling, detention or demurrage before, during and after the carriage of property (including but not limited to containers) of the carrier or any person or vessel (other than the merchant) caused by the merchant or any persons acting on his behalf or for which the merchant is otherwise responsible.
(e) The merchant shall defend, indemnify and hold harmless the carrier against any loss, damage, claim, liability or expense whatsoever arising from any breach of the provisions of this clause or from any clause in connection with the goods for which the carrier is not responsible.

**PERIOD OF CARRIER'S RESPONSIBILITY**
9. Port to Port Shipment
The carrier shall not be liable for loss of or damage to the goods of whatsoever nature during the period before loading and after discharge from the vessel (whether at the port of destination wheresoever) howsoever that loss or damage arises even if cause by act, negligent or default of the carrier, his agents or servants or other persons for whom the carrier is responsible and even though the goods are, or may be deemed to be in the custody of the carrier as warehouseman or otherwise howsoever.
10. Combined Transport
(a) Where the loss or damage occurred during the sea carrying stage then the carrier shall be entitled to rely upon all the rights, limitations, and immunities as set forth in this Bill of Lading.
(b) Where the loss or damage occurred during a non sea carrying stage and contrary to the terms and conditions of this Bill of Lading the carrier shall be deemed liable therefore, then the carrier shall be entitled to rely upon all the rights, limitations and immunities under local, national or international law or convention as applicable for non sea carriage in the place or places where the loss or damage occurred or where suit is brought.
(c) Where the stage of carriage where the loss or damage occurred cannot be ascertained and contrary to the terms and conditions of this Bill of Lading the carrier shall be deemed liable therefore, then the carrier shall be entitled to rely upon the rights, limitations and immunities as set forth in paragraph 10(a) or (b) herein whichever is the most beneficial to the carrier.

**PARAMOUNT CLAUSE**
11. The contract evidenced by this Bill of Lading shall have effect subject to the Hague Rules or Hague Visby Rules as the case may be or any equivalent rules or amendments thereof only
(a) If so incorporated by Statutory Instrument in the country in which claims hereunder are properly brought, or if not so incorporated
(b) to the extent whereby only the rights, liberties, limitations and defenses available to the carrier are incorporated herein.

**LIMITATION OF LIABILITY**
12. If the Hague Rules, Hague Visby Rules or equivalent rules or law are not statutorily incorporated herein in accordance with Clause 13
a) The carrier shall not be responsible for any loss, damage or delay of whatsoever nature howsoever arising even if caused by the failure of the carrier to make the vessel seaworthy at any time or by any act, neglect or default of the carrier, his agents or servants, and
b) Any claim hereunder shall be made in writing and suit commenced before the expiration of 0 months after delivery of the goods, or the date when the goods should have been delivered, failing which the carrier and vessel shall be discharged from all liability of whatsoever nature and the claim shall be deemed waived and absolutely barred.
3. Without prejudice to the foregoing neither the carrier or the vessel shall in any event be liable or any loss or damage of whatsoever nature to or in connection with the goods in an amount exceeding US$500 per package, or if shipped in a container per container, or if not shipped on board in packages or containers, per long ton weight of the goods in question, unless the higher value of such goods be inserted in this Bill of Lading. Should the inserted value be greater than the actual value of the goods the actual value shall be deemed to be the inserted value.
4. The defenses, rights, liberties and limits of liability provided for in this Bill of Lading will apply any action or suit against the carrier whether that action or suit be formed in contract or in tort

**SCOPE OF THE VOYAGE**
5. This Bill of Lading is for liner service whether a part of the combined transport or howsoever and the voyage undertaken shall include usual or customary or advertised ports of call whether named in this Bill of Lading or not, also ports in or out of the advertised geographical usual or finary route or order, even proceeding thereto the vessel may sail beyond the port of charge or in a direction contrary thereto, or depart from the direct or customary route. The vessel may proceed at full or reduced speed, call at any port for the purpose of the current voyage or the purpose of a prior or subsequent voyage. The vessel may omit calling at any port or ports whether scheduled or not, and may call at the same port more than once either with or without the goods on board, and before or after proceeding towards the port of discharge, adjust

**SUBSTITUTION, TRANSHIPMENT AND FORWARDING**
16. The carrier shall be at liberty to perform the carriage of the goods wholly or partly by the vessel named herein, by any other vessel, whether belonging to the carrier or whosoever, or by any other means of transportation whatsoever.
17. For the purposes therefore the carrier is at liberty to land, store (either ashore or afloat), tranship and forward goods and sub-contract on any terms whatsoever the whole or any part of the carriage.
18. In performing the liberties under Clauses 16 and 17 herein the carrier shall not be liable for any loss or damage to the goods after discharge from the vessel named herein unless the goods are reloaded on board a vessel owned or demise chartered by the carrier and then the carrier's liability shall be limited to the period during which the goods are carried upon the carrier's vessels only and shall cease immediately upon discharge as aforesaid.

**OPTIONS**
19. Ports
Where cargo is carried to be discharged at named ports one of which is declarable in the option of the merchant the said option must be declared not later than 48 hours prior to arrival at the first named port. In the absence of a valid declaration as aforesaid the carrier may in his absolute discretion discharge at the first named port or any other of the named ports and upon discharge the contract of carriage shall be deemed to be duly fulfilled. The option may only be exercised by the merchant in relation to the discharge at one port of all the cargo carried hereunder.
20. Stowage
(a) Goods may be stowed by the carrier as received or, at the carrier's option into containers, upon pallets or, into or upon any other articles whatsoever to consolidate goods for stowage, handling or whatsoever.
(b) Containers, trailers, transportable tanks and the like whether stuffed by the carrier or the merchant may be carried on or under deck without notice to the merchant.

**LIVE ANIMALS AND DECK CARGO**
21. Paramount Clause
The carriage of live animals and cargo on deck, whether stated on the face of this Bill to be so carried or not, shall be solely at the merchant's risk and the carrier shall not be liable for any loss, damage or delay of whatsoever nature even if caused by the act or neglect or default of the carrier, his servants or agents to make the vessel seaworthy or howsoever. The Hague Rules or Hague Visby Rules as the case may be are specifically excluded from the carriage of live animals and deck cargo.
22. General Average
Goods carried upon deck shall contribute to and receive contributions from all other interests in General Average.

**LIEN**
23. The carrier shall have a lien upon cargo for:
(a) all amounts of whatsoever nature due under this Bill of Lading, and
(b) for the costs of exercising the aforesaid lien.
24. The carrier shall be entitled to sell the goods privately or by auction to recover all amounts of whatsoever nature due under this Bill of Lading, including the costs of exercising a lien, and shall hold the balance of the sale proceeds, after deduction of the amounts as aforesaid, to the order of the merchant.

**FREIGHTS AND CHARGES**
25. Freight shall be payable on gross intake weight or measurement, or gross discharge weight or measurement or ad valorem basis, or package basis at carrier's option. Freight may be calculated on the basis of the particulars of the goods furnished by the merchant herein but the carrier may at any time open the packages and examine, weigh, measure and value the goods. Should the merchant's particulars be found to be incorrect and additional freight is payable, the goods shall be liable also for any expense incurred in examining, weighing, measuring and valuing the goods.
26. Full freight hereunder to port of discharge and/or final destination named herein shall be considered completely earned on shipment of the goods whether the freight be stated or intended to be prepaid or to be collected at destination and the carrier shall be entitled to all freight and charges due hereunder whether actually paid or not and to receive and retain them under all circumstances whatsoever ship and/or goods lost or not lost. Full freight shall be paid whether the goods be damaged or lost or not, packages be empty or partly empty or whether the voyage is performed in a substitute vessel or abandoned or frustrated. Should the voyage be abandoned or frustrated then all unpaid freight and charges shall be paid in full without any offset counterclaim or deduction.
27. The merchant shall be liable for the expense of fumigation, mending, cooperage, bailing, weighing or reconditioning of the goods or packages: also for any payment, expense, fine dues, tax, import, loss, damage or detention sustained or incurred by or levied upon the carrier or the ship in connection with the goods, howsoever caused including any action or requirement of any Government authority or person purporting to act under the authority thereof, seizure under legal process or attempted seizure, incorrect or insufficient marking, numbering or addressing packages or description of the contents, failure of the merchant to procure Consular, Board of Health or other certificate to accompany the goods failure to comply with laws or regulations of any kind imposed with respect to the goods by the authorities at any port or place or any act or omission of the merchant.

**GENERAL AVERAGE AND SALVAGE**
28. Adjustment
General Average shall be adjusted at any port or place at the carrier's option and to be settled in accordance with the York-Antwerp Rules 1974 as may from time to time be amended.
29. New Jason Clause
In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which or for the consequence of which the carrier is not responsible by statute, contract or otherwise, the merchant shall contribute with the carrier in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the goods. If a salvaging ship is owned or operated by the carrier, the salvage shall be paid for in full as if the said salvaging ship or ships belonged to strangers. Such deposit as the carrier or his agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the merchant and any salvage and special charges thereon shall, if required, be made by the merchant to the carrier before delivery of the goods.

**BOTH-TO-BLAME COLLISION CLAUSE**
30. If the vessel comes into collision with another vessel as a result of the negligence of the other vessel of any act, negligence or default of the Master, Mariner, Pilot or the servants of the carrier in the navigation or in the management of the vessel, the merchant will indemnify the carrier against all losses or liability to the other non-carrying vessel or her owner insofar as such loss or liability represents loss of or damage to or any claim whatsoever of the merchant paid or payable by the other non-carrying vessel or her owner to the said merchant and set off, or recouped or recovered by the other or non-carrying vessel or her owner as part of his claim against the carrying vessel or carrier. The foregoing provisions shall also apply where the owners, operator or those in charge of any vessel or vessels or objects other than, or in addition to, the colliding vessels or objects are at fault in respect of a collision or contract.

**HIMALAYA CLAUSE**
31. It is hereby expressly agreed that no servant or agent of the carrier (including every independent contractor from time to time employed by the carrier) shall in any circumstances whatsoever be under any liability whatsoever to the merchant for any loss, damage or delay of whatsoever kind arising or resulting directly or indirectly from any act, neglect or default on his part while acting in the course of or in connection with his employment and, without prejudice to the generality of the foregoing provisions in this clause, every exemption, limitation, condition and liberty herein contained and every right, exemption from liability, defense and immunity of whatsoever nature applicable to the carrier or to which the carrier is entitled hereunder shall also be available and shall extend to and protect every such servant or agent of the carrier acting as aforesaid and for the purpose of all the foregoing provisions of this clause is or shall be deemed to be acting as agent or trustee on behalf of and for the benefit of all persons who are or might be his servants or agents from time to time (including independent contractors as aforesaid) and all such persons shall to this extent be or be deemed to be parties to the contract in or evidenced by this Bill of Lading.

**WAR CLAUSE**
32. This Bill of Lading shall not be issued for any blockaded port and if the port of discharge be

port whatsoever and shall be entitled to freight as if the vessel had discharged at the port or ports of discharge to which she was originally ordered.
33. The vessel shall have liberty to comply with any orders or directions as to departure, arrival, routes, ports of call, stoppages, destination, delivery or otherwise, howsoever given by the Government of the Nation under whose flag the vessel sails or any department thereof, or by any other Government or any department thereof or any person acting or purporting to act with the authority of such Government, or of any department thereof, or by any committee or person having, under the terms of the War Risks Insurance on the vessel, the right to give such orders or directions and if by reason of and in compliance with any such orders or directions anything is done or is not done, the same shall not be deemed a deviation, and delivery in accordance with such orders or directions shall be a fulfillment of the contract voyage and the freight shall be payable accordingly.
34. Should the vessel or goods on board be, in the option of the carrier, exposed or likely to be exposed to seizure, damage or delay arising or resulting from war or warlike activities or operations, blockades or piracy, or should any person on board be, in the opinion of the Master, exposed or likely to be exposed to the risk of loss of life, injury or restraint of freedom, the carrier shall be at liberty to discharge the cargo at any port whatsoever and shall be entitled to freight as if the vessel had discharged at the port or ports of discharge to which she was originally ordered.

**LOADING, DISCHARGING AND DELIVERY**
35. Anything to the contrary herein, whether by printing, stamp, typewriting handwriting or howsoever notwithstanding:
(a) The goods are accepted for shipment and shall be loaded from alongside the vessel at the port of loading whether on barges, railroad cars, trucks or howsoever, and
(b) The goods shall be deemed to be discharged and delivered to the merchant alongside at the port of discharge whether in barges, railroad cars, trucks or howsoever.
36. The merchant shall deliver the goods alongside at the port of loading and shall provide barges, railroad cars, trucks or whatsoever alongside at the port of discharge to enable the vessel to load and discharge as fast as the vessel can take or deliver cargo without hindrance or delay during or outside of normal working hours custom of the port notwithstanding.
37. Should the goods not be delivered alongside by the merchant for loading as aforesaid, then:
(a) The carrier may in his absolute discretion refuse to ship the goods and if the space on the vessel cannot be reasonably filled by goods from another merchant then the merchant shall pay deadfreight equal to the gross freight lost by the carrier, or
(b) The carrier may accept the goods for shipment upon the merchant paying demurrage as particularized in Clauses 41 and 42 herein for all the time the vessel is delayed consequent upon the goods not being brought alongside as fast as the vessel can load.
38. Should the merchant not provide barges, railroad cars, trucks or whatsoever at the port of discharge to accept the goods alongside as aforesaid then:
(a) The carrier may without any previous notice whatsoever land and store the goods at the merchant's risk and expense, and
(b) The merchant shall pay to the carrier demurrage as particularized in Clauses 41 and 42 herein for all the time the vessel is delayed consequent upon the merchant not taking the goods from alongside as fast as the vessel can deliver.
Discharge as aforesaid shall be deemed to be a true fulfillment of the carrier's obligations to the merchant hereunder and insofar as the goods remain, actually or constructively, in the carrier's possession thereafter the carrier shall be deemed to be dealing with the goods as a warehouseman and not as a carrier.
39. Any costs or expenses incurred together with the risks involved by lightening the vessel at any place or port, whether at the place or port of discharge or wheresoever shall be borne by the merchant.
40. If upon the reasonable belief of the carrier the vessel will be delayed before loading the goods, during loading, upon the voyage, before discharging of the goods, during discharge or before leaving the discharge port, for a period of more than 48 hours for any cause whatsoever including but not limited to and without prejudice to the generality of the foregoing, strikes, lockout, restraint of trade, breakdown of machinery, ice, embargoes, Governmental actions or congestion resulting from any cause whatsoever then:
(a) If all the goods herein have not been loaded then the carrier may cancel the contract evidenced by this Bill of Lading.
(b) If all the goods herein have been loaded the carrier may in his absolute discretion
(i) Deal with the goods in accordance with Clause 16, 17 and 18 herein and/or
(ii) Discharge and/or store the goods or any part thereof at the port of loading and/or
(iii) Proceed to and discharge and/or store the goods at any other port or place whatsoever directly or howsoever or
(iv) Give notice to the merchant of the carrier's reasonable belief and give the merchant the option of accepting delivery of the goods as herein provided or pay demurrage in accordance with Clauses 41 and 42 herein whilst the vessel is delayed. The merchant shall make his option within 24 hours of the carrier giving notice as aforesaid failing which the carrier is at liberty to deliver the goods as herein provided. Should the merchant elect to pay demurrage the carrier shall not be obliged to wait for a period longer than 21 days after the commencement of the demurrage period.

If and when the goods are dealt with as aforesaid the merchant shall bear and pay all charges and expenses of whatsoever nature. Full Bill of Lading freight and charges shall be deemed to have been earned and the carrier shall be freed of all responsibility in respect of such goods, the goods being at the carrier shall not be liable for any loss of or damage to or in connection with the goods whatsoever, howsoever caused and such discharge shall constitute complete delivery and performance hereunder. The carrier shall not be required to change the geographical rotation of the vessel's planned itinerary in order to reduce, minimize or otherwise eliminate the delay.

**DEMURRAGE**
41. A delay to the vessel shall be deemed to be such period of time when:
(a) The vessel is not proceeding upon her voyage or working cargo, and
(b) Cargo is not being worked as fast as the vessel can take or deliver the cargo from or to alongside as the case may be.
In such circumstances if, in accordance with the terms and conditions of this Bill of Lading the merchant shall be directly or indirectly responsible therefore, whether by election, fault or howsoever then the merchant shall pay such sums as hereafter set forth and termed "demurrage".
(i) Such sum per day or pro rata for part of a day as the parties may have herein agreed as demurrage, or
(ii) US$0.30 per ton of the vessel's gross registered tonnage per day or pro rata for any part of a day howsoever
(iii) If other merchants with goods upon or due to be loaded upon the vessel are similarly deemed to be responsible as aforesaid then they shall each share the gross demurrage particularized in Clauses 41 and 42 herein in such proportion as their tonnage or cargo compares with the total of the tonnage of all the responsible merchants, and
(iv) The merchants liability for demurrage shall not be limited to their freight or the value of the goods.
42. Demurrage shall be earned day by day and so payable to the carrier. In any event full demurrage shall be paid before the goods are discharged.

**DANGEROUS GOODS**
43. Any goods shipped by the merchant which are, or may become of a dangerous nature, whether or not such goods be so designated by Imco Regulations or whosoever, shall be clearly marked as such and the merchant has the absolute obligation to inform the carrier of the goods' dangerous nature and give specific instructions upon how the goods shall be safely carried.
44. Any goods of a dangerous nature not so marked and declared as particularized in Clause 43 herein, may be discharged, destroyed, jettisoned or rendered harmless by the carrier and the vessel may deviate therefore without any compensation whatsoever to the merchant and the merchant shall be liable for all expenses, loss or damage directly or indirectly arising from their aforesaid failure to mark and inform.
45. The carrier may at any time without compensation to the merchant discharge, destroy, jettison or render harmless, and may deviate therefore, any goods which in the reasonable belief of the carrier are of, or may become of, a dangerous nature and are, or may be likely to become, a danger or hazard to other goods and/or the vessel whether such goods are carried in accordance with Clause 38 herein or howsoever.
46. Notwithstanding anything in Clauses 43, 44 and 45 appearing to the contrary, goods of a dangerous nature shall contribute to but not benefit from General Average notwithstanding they are dealt with as aforesaid and/or actually cause loss or damage to other goods and/or the vessel.

**JURISDICTION**
47. All claims and disputes of whatsoever nature shall be determined exclusively by the Courts and the law of the country which the carrier has his principle place of business.